May it please the Court, Mr. Dice, may it please reserve two minutes of my argument time for rebuttal. Just watch the clock. Okay. You're a master of your time. Okay. I was told I could do that. I'd tell, I know, you can reserve whatever you want. Okay. Thank you, Your Honor. Or whatever will let you. Okay. There are three reasons why trial counsel in this case was unprepared for trial, especially at the opening statement. And the most important thing was Mr. Thompson, the alibi witness, had not cooperated with the defense investigator, had not granted an interview, and he had not helped him develop the alibi. He hadn't taken, he wanted, the defense investigator wanted to go to Judas Street in San Francisco and find the community center. If your witness is not cooperating, that's being unprepared. Two other reasons. Now, if your witness isn't cooperating, why does that make you unprepared? You can't control the level of cooperation you're going to get from your witnesses. So how does that make the attorney unprepared because the witness does not cooperate? I would cite to the Court Williams v. Woodford, which is a similar case that Judge Kaczynski wrote. In that case, Judge Kaczynski talked about how, before you put a witness on the stand, you should talk to that witness. Have some sort of idea of what that witness is going to say. As a per se rule, perhaps I overstepped. But in this specific case, on these specific facts, to put Mr. Thompson on blind is ineffective assistance of counsel. Well, let's think about it. Wasn't it really a strategic decision? I mean, he had Mr. Thompson. His main line of defense was misidentification. And he was going to ask a lot of questions regarding that. That was going to be the core issue. This whole alibi was sort of an alternative sort of defense, it seems like. The two witnesses testified. It looks like he made a good run at him, and he decided that he didn't need to put on Mr. Thompson. He had mentioned Mr. Thompson at the beginning, but how does that make it not a strategic decision that he thought about it, he mentioned it? Because that's all your argument right now, the fact that he mentioned it. Yes. Correct, right? Not that he decided not to do it, right? I would not have put him on. I don't think he should have put him on. Well, that's not the standard, though. No, that is not the standard. But in answer to Judge Murguia's question, at the beginning of any case, you have to – Strickland requires you to make all factual and legal considerations before you do anything. And here, the factual and legal – mostly the factual consideration of whether or not to mention Mr. Thompson wasn't fully developed. I mean, read the police interview. It's not, as Mr. Porey, the trial attorney, characterized it, it's not an intense interrogation. It's a very kid-glove interrogation. And Mr. Thompson doesn't hold up very well. He's very halting. That – and to not talk to that gentleman and see if he's going to even stick to what he even said to the police before you mention him is ineffective. Other things that you could – You made a slightly different argument than you made in your brief. In the brief, you focused on the fact that he mentioned in his opening statement that he was going to present an alibi witness and then did not present that alibi witness. Now you've extended it to the point where you're saying he didn't prepare the witness. Well, one of the things I did cite in my brief was the lack of the investigator not talking to him. I know I cited that in the brief. That's an important part of our case. But your focus was on mentioning him in the opening statement and then not calling him. Yeah. Well, not calling him is, you know, at that point, it's a no-win situation once you've mentioned him. With that horrible an alibi, if you call him, you're doomed. If you don't call him, you're doomed because of setting up that – Well, but it wasn't because he had a – it was a horrible alibi. It was because the other witnesses had not held up very well, the ones who, you know, were going to identify. And so I just – I'm trying to figure out. I mean, the cases that you cite, most of them are when the defense counsel say that the defendant's going to testify, you're going to hear from the defendant, and then the defendant doesn't testify, and that's the main defense. I'm just trying to see how this compares to that. Well, I believe – I don't want to believe – this was a dramatic, specific, and significant part of the opening argument. If you read that page, not just the four lines of him mentioning Mr. Thompson, but it's a summation of the entire opening argument. He says the evidence in this case is going to show you this flimsy identification without any forensic evidence to back it up. It's a sham. When you hear all the evidence in this case, you'll acquit Mr. Coleman on these charges because he wasn't there. It's a huge summation. And then he goes on. Well, that's consistent with the misidentification argument. It is. But once you conclude your misidentification, you know, this is a reasonable doubt case, but he's innocent, and I can prove it to you, you have opened up a can that you can – of worms that you cannot recap. It's impossible to do so. In fact, Judge Kaczynski's Williams case talks about all the things that that sets up.  And we'll see how, when the jury doesn't hear about the allied witness, they're going to assume it's not true, and they're going to fill the gaps of the prosecution case. All the reasonable doubts that were there from the beginning, from the very beginning, that trial counsel didn't even have to develop. He knew beforehand. Well, in Williams, a guy tested and said 10 times, promised the witness 10 times. Here, it seemed like this was just one of many things that he said. And then at the end, he says, well, you know, we don't have a burden here. I decide who to call. I didn't think it was necessary to call anybody, because they have such a weak case. It's a little different. Well, Justice Kuczynski, he didn't quite say, I'm not calling the alibi witness, because It's a tough call, because once you sort of put it out there, you don't want to sort of raise it again. But he did sort of give an explanation, saying, well, you know, I didn't call the alibi witness because their case is so weak. In fact, he didn't say he talked about another case where he put on no evidence, and he talked about how he was able to defeat that, to talk about in closing argument, I didn't put on any witnesses because I didn't need to. Here, he put on witnesses. If you're putting on witnesses, you need to put on your entire case. That's what the jury is going to wonder. Why did you put on some but not all your witnesses? The Williams case made the point that 13 promises were made and none kept. Isn't that a distinction in this case? That is a distinction, Your Honor. But I think that in this specific case, on these facts, what Mr. Pori did at opening  this was a winnable case, a very winnable case, that, you know, he didn't talk to Dr. Shomer beforehand. He didn't talk to his client beforehand about whether or not he was going to testify until mid-trial. All these decisions that played into whether he was actually going to put Mr. Thompson on, he hadn't engaged in until trial. Of course, under EPA, we're supposed to be applying Supreme Court law. So what's the Supreme Court decision that most strongly supports your argument that there was ineffective assistance of counsel in this case? Your Honor, the Supreme Court talks about Strickland as being a general standard and that specific facts, a case-by-case analysis. Here, because the Court is reviewing it de novo, you're allowed to examine the specific instances of whether or not this happened. And that's a double-edged sword because the more general the standard is, the more leeway the courts have to apply it. So that makes it more difficult for you to challenge the district court decision in this case. I stand by what I said previous, and I have about a minute left, and I'd like to reserve it for rebuttal, please. Very good. Thank you. We'll hear from the warden. May it please the Court, John Dice for the warden. Until today, there's never really been any question here of the attorney's effectiveness in interviewing the alibi witness or interviewing the expert on identification. The issue has always been, was the attorney ineffective for mentioning the alibi witness in opening statement and ultimately deciding not to use him? And it was made very clear at the evidentiary hearing, the defense attorney always gives an opening statement. He always gives everything he's got. He intended to call the alibi witness at the outside of trial. There was really no perfect opening statement that he could have given that would cover every base perfectly. If he had postponed or deferred his opening statement, he would have violated his cardinal rule of trial. You've always got to hit back immediately. If he had given an opening statement without mentioning the alibi witness, and then he ultimately called the witness, the jurors would say, why are you calling a witness that you didn't even mention in your opening statement? That would seem very strange to the jurors. So he followed his practice. He ultimately thought he had a strong case, and so he didn't call the alibi witness. And he told the jurors, it's my decision which witnesses to call. The trial court instructed the jury, base your decision on the evidence presented in court. Don't draw any inferences. And so I think that the state court and the magistrate, the district judge below, found that there was no ineffectiveness, no prejudice, and I would submit it unless the court has questions. But what's your response to opposing counsel's reliance on the Williams case? Williams, that was Judge Kaczynski's case as trial judge. Yes. I think the court pointed out it was either 10 or 13 specific promises. And if you read the opening statement here, it was, I won't get into specific percentages, but my recollection, it was 80 percent. This case is misidentification. And then finally, as an afterthought, I call it an afterthought. It was clearly at the end of the opening statement. And, oh, by the way, you're going to hear from an alibi witness. The defendant has an alibi. But it was not the focus of opening statement. In closing argument, the prosecutor did not mention it. You think it's competent for a lawyer to make that promise when he hasn't even talked to the witness? Well, that's a slightly different question. But I think that if it's he thought that he was going to need that witness, it could be that the two prosecution witnesses would come in and say, that's the man. And in that case, he has no choice. He's got to prove it. Well, what I heard counsel say this morning, and I agree with you, I think that's a little different from what was in the briefs. And maybe it's different enough where it's not observed. So maybe you want to address that. But what I heard counsel argue this morning is the he didn't say it in quite those words, but what I'm saying, the incompetence happened earlier. He's approaching the trial date. He knows he has an alibi witness. And he doesn't even talk to him. And when he sort of gets to the day of trial and he has passed up the opportunity to talk to the witness, that's when he committed his inadequate performance. Well, that's certainly not the claim that has been presented to the Court. But I would go further and say I think it was very clearly in the end as a reserve fallback position for him. Well, is there anything in the record regarding whether or not the attorney had talked to the alibi witness? The record showed that he had reviewed the police reports, and I think the investigator, the defense investigator, had tried to contact the witness unsuccessfully. So it seemed he was the alibi witness was reluctant. So the answer to the question is? So the defense attorney definitely did not talk to the witness. And it wasn't – it was never fleshed out because it was never an issue, the extent to which he tried to contact the witness. Do you think one broken promise is enough to establish ineffective assistance? Certainly not in this case. I mean, it depends what the promise is, right? That's right. I mean, if you say, you know, I will prove that my client was meeting with President Obama in the White House, I mean, you know, if it's specific and graphic enough. Sure. It could be, right? Of course. And I think the Williams case is the prime example. I don't think Williams hurts me at all because the facts were so egregious. I mean, there's ten promises that make up the focal point of the defense case. As I recall, you guys didn't appeal. Well. Which is why it's a lie, I think. Yeah. But I think there was no appeal. The case was so. Right. I have no problem with the decision in that case. I just think it's completely distinguishable from the facts here. Was this really a D2 analysis here? Can you talk to me about that a little bit? I mean. Your Honor, it's tough, and frankly, I'm not sure. Because I think the key question is, was the decision of the State court objectively unreasonable? Now, the court applied Strickland, and the court said, if the defense attorney has declared he intends to call an alibi witness when he gives an opening statement and he mentions the alibi witness in opening statement, but at the conclusion of trial he doesn't call that witness, we find that reasonable tactical behavior. And I think that that's an objectively reasonable conclusion. So you don't take issue with opposing counsel's observation that this is de novo review? Well, the district court said it was de novo review. We disputed that. But in a certain sense here, because the district court found the behavior objectively reasonable, we've got the State court finding the attorney's decisions reasonable. The district judge found so as well. And so we're also talking about IAC, and we know there are extra levels of deference applicable to that. So I'm not sure how many levels of deference that we have, but my final analysis is that this decision was so reasonable that at any level it would be very difficult to set it aside on appeal. Thank you. You have about a minute left. Your Honors, if I had opened my presentation previously by pulling a hand grenade out of my pocket and just setting up here, putting it right here on the podium silently and not really saying much about it, it would still be a hand grenade. And I only have to say it once, or I only have to do that once for you to capture your attention. I think we'd be gone very quickly. You can count on a very swift adjournment. And I think the gentleman in the back would have something to say about that. He would. But I think we understand the point. Let's say it's not a hand grenade. Let's say it's a brown paper bag. Or a Malabar. The mind wants to say, you know, what's inside the bag. Okay. On page 7 of my brief I mentioned the lack of contact with the witness in the facts. And I'm appealing what Judge Drozd said. It was critical that at the time of opening he was justified in mentioning Mr. Thompson. Let me just ask you, you know, what you're saying sounds very reasonable. But we're, I think, in a triple deference situation. At least double deference and maybe triple deference. We have the Strickland deference to the lawyer's judgment. We have the state court's deference. So we owe the lawyers some deference. We owe the state courts some deference. And now we have a district judge all saying this is competent. I am out of time. May I answer your question? Please. As to the first deference to, well, the deference to the state court. The state court, Judge Drozd correctly found, that the promulgation case had been met. And so he got an overview of the question. There is definitely the Strickland presumption that I have to overcome the first deference. But as to whether or not the district court's opinion is owed deference, cases from this court, Lambert v. Blodgett, 393, Fed 3rd, 943. The case from the U.S. Supreme Court, Thompson v. Keohane, 516 U.S. 99, talk about how mixed questions of fact and law are always reviewed de novo, such as what's in this case. But it's still reviewed for reasonableness. Regardless of whether it's de novo review, we're still looking for reasonableness of the state court decision. Now, on the facts, but legal decisions, which this is, you are bound to review de novo. That's your job. Yes. But once we review de novo, it's still the AEDPA standard, which instructs us to determine whether or not the decision was reasonable. Well, and I believe AEDPA is not in play in this case, Your Honor, based upon the district court's finding and upon my briefs that ---- I don't know. I don't know if I agree with the AEDPA standard goes away just because it's de novo review. Well, the Supreme Court has said it does, I believe. In fact, it has. Okay. Thank you very much, Your Honors. But there's double deference whether it's AEDPA or not, right? I believe ---- At least double deference. I understand you have an issue about the district court. But whenever we review a state court's Strickland determination, whether it's under AEDPA or pre-AEDPA law or non-AEDPA law, there are two levels of deference. It's double deference until ---- and if I get past 2254d, then it's just the wanted de novo review, it's the presumption that counsel is effective, which the district court believed was overcome, and the state court was unreasonable in not seeing that based upon the record in the state court. Okay. Thank you. You're welcome. The case is argued. We'll stand for a minute.
judges: Kozinski, Rawlinson, Murguia